# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CALVIN BOWMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:17-cv-255-AKK** |
| **CITY OF BIRMINGHAM,** *et al.*, | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

Calvin Bowman, proceeding pro se, asserts claims against the City of

Birmingham, Kevin Moore, and Jarvis Patton under 42 U.S.C. §§ 1981 and 1983.

Specifically, Bowman alleges that the Defendants retaliated against him for

complaining about alleged mistreatment in the workplace, presumably in violation

of his rights under the First Amendment. Presently before the court is the

Defendants' Motion for Summary Judgment, doc. 44, which is fully briefed, docs.

45, 52, 53,[1] and ripe for review. For the reasons stated more fully below, the

motion is due to be granted.

---

[1] Also before the court is Bowman's Motion to File a Surreply Brief and Motion to Strike
Portions of the Defendants' Reply Brief, doc. 54, which is opposed, *see* doc. 55. To the extent
Bowman seeks leave to file a surreply, the motion, which includes the text of the proposed
surreply, is due to be granted, and the court will construe it as Bowman's surreply. To the extent
Bowman seeks to strike the statements in Defendants' pleadings that "other employees handled
Bowman's duties in the Crossplex [during his reassignment to the Finance Department]" and that
"[the City's investigation into his complaint] was concluded on October 7, 2013," doc. 54 at 6-8,
the motion is due to be denied. *See Thompson v. Kindred Nursing Ctrs. E., LLC*, 211 F. Supp. 2d

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of proving the absence of a genuine dispute of material fact. *Id.* at 323. The burden then shifts to the non-moving party, who is required to go "beyond the pleadings" to establish that there is a "genuine issue for trial." *Id.* at 324 (internal citations and quotation marks omitted). A dispute about a material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 244 (all

1345, 1348 (M.D. Fla. 2002) (motions to strike are disfavored and infrequently granted); *Bush v. Barnett Bank of Pinellas Cty.*, 916 F. Supp. 1244, 1249 (M.D. Fla. 1996) (motions to strike "will usually be denied unless the allegations have no possible relation to the controversy and might cause prejudice to one of the parties") (citations omitted). In any event, the challenged statements are not material to the determination of this motion.

justifiable inferences must be drawn in the non-moving party's favor). Any factual dispute will be resolved in the non-moving party's favor when sufficient competent evidence supports that party's version of the disputed facts. *But see Pace v. Capobianco*, 238 F.3d 1275, 1276-78 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that a jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

Additionally, because the Plaintiff is pro se, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). "*Pro se* pleading are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006).

**II. FACTUAL BACKGROUND**

Bowman is an African American man currently employed by the City in the Birmingham Crossplex Department. Doc. 45 at 7. In 2011, Patton, the Chief of Operations, transferred Bowman into a management position in charge of accounting duties within the Crossplex Department. *Id.* at 8-9. Subsequently, Moore, an African American, received a promotion to director of the department, and became Bowman's direct supervisor. *Id* at 7-8. Bowman made a series of complaints against Moore, which the court will outline in sequential order. Basically, this lawsuit stems from Bowman's contention that Moore and Patton retaliated against him for complaining that Moore was engaging in racially discriminatory and retaliatory employment practices.

In February 2013, Bowman learned that an event caterer had not yet received disbursements from the City, and met with Moore to discuss this issue. *Id.* at 9-10. At the time, no formal procedure existed for making payments on this contract. *Id.* Bowman blamed Preston Kirk, a white employee in charge of booking events, for the payment delay. *Id.* at 10. Moore disagreed, finding instead that disbursements to event caterers were an accounting function, and as a result, he assigned Bowman the responsibility for that task going forward. *Id*. When Moore took no disciplinary action against Kirk, *id.,* Bowman accused Moore of "showing Kirk favoritism," and asserted that Moore was "quick to discipline the black

employees but he refrain[ed] from disciplining the white employees when they [did] something wrong," docs. 45 at 10-11; 52 at 6. As a result of this complaint, Moore purportedly retaliated against Bowman by assigning Bowman tasks normally done by administrative staff and other additional tasks, admonishing Bowman for staying inside his office during events and for leaving the office without telling others where he was going, allowing other employees to supervise Bowman, reducing Bowman's supervisory authority, and downgrading Bowman's performance evaluations. Doc. 45 at 11.

The allegedly retaliatory conduct led Bowman to file a complaint (Bowman's second complaint) with the City's human resources department, alleging that Moore had engaged in racial discrimination and retaliation and created a hostile work environment. Docs. 45 at 11; 52 at 17; 52-1 at 17. The City hired outside counsel to investigate the allegations. Doc. 45 at 11. In the interim, Patton reassigned Bowman to the Finance Department. Docs. 45 at 11; 52 at 17. Ultimately, the investigation concluded in a result of "no findings," and the City took no action against Moore. Doc. 45 at 12. Patton transferred Bowman back to the Crossplex Department after the investigation. Doc. 52 at 23. Bowman expressed his disagreement with the "no findings" result (Bowman's third complaint) due to Patton's failure to give him a written copy of the report. Docs. 52 at 22; 52-1 at 23.

After Patton transferred Bowman back to the Crossplex Department, Moore removed Bowman's supervisory duties and decision-making authority. Doc. 52 at 23. Bowman informed Patton that Moore was still engaging in retaliatory conduct (Bowman's fourth complaint). *Id.* at 25. A month later, Patton demoted Bowman from manager and relegated Bowman to doing accounting work solely. Docs. 52 at 25; 52-1 at 33. This lawsuit followed.

## III. ANALYSIS

Bowman asserts a First Amendment retaliation claim against all Defendants and a retaliatory hostile work environment claim against the City under §§ 1981 and 1983. Doc. 1 at 55-57. Relevant here, the Defendants seek summary judgment on the grounds that (1) § 1981 claims do not apply to state actors, (2) Bowman cannot show a City policy of discrimination, and (3) Moore and Patton are entitled to qualified immunity.[2] Doc. 45 at 14-34. The court addresses each issue in turn.

### A. The § 1981 Claims

"Section 1981 does not provide a cause of action against state actors; instead, claims against state actors or allegations of § 1981 violations must be brought pursuant to § 1983." *Baker v. Birmingham Bd. of Educ.*, 531 F.3d 1336, 1337 (11th Cir. 2008). The Defendants are all state actors, and, as such, they

---

[2] The Defendants also argue that Bowman cannot show retaliatory conduct sufficient to establish his hostile work environment claim. Doc. 45 at 34-35. However, because the first three grounds are sufficient to resolve the motion, the court does not reach this issue.

contend they are due summary judgment on Bowman's § 1981 claims. Doc. 45 at 14. Bowman does not address this argument, stating instead that he "invoked § 1983 in the complaint." *See* doc. 52 at 7. Therefore, the court finds that Bowman has abandoned his § 1981 claims, if any, and that the motion is due to be granted as to these claims. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (issue not briefed deemed abandoned).

## B. The § 1983 Claims Against the City

To prevail on a § 1983 claim, a plaintiff must show that the defendant has violated rights secured by the Constitution or by federal statute.[3] *See Martes v. Chief Exec. Officer of S. Broward Hosp. Dist.*, 683 F.3d 1323, 1325 (11th Cir. 2012) (citing *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980)). Here, Bowman contends that the Defendants retaliated against him for engaging in allegedly protected speech, i.e. his complaints about the alleged discrimination and retaliation. Doc. 1 at 55-57. Consequently, as the Defendants note, doc. 45 at 23-33—a fact Bowman does not challenge in his response brief, *see* doc. 52—the constitutional right Bowman is raising in his § 1983 claim is the First Amendment.

---

[3] Title 42 U.S.C. § 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

"[M]unicipalities are subject to § 1983 liability when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may be fairly said to represent official policy, inflicts the injury[.]" *Mercado v. City of Orlando*, 407 F.3d 1152, 1161 (11th Cir. 2005) (citing *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978)). "It is not sufficient for a government body's policy to be tangentially related to a constitutional deprivation. The 'official policy or custom must be the moving force of the constitutional violation in order to establish liability of a government body under § 1983.'" *Cuesta v. Sch. Bd. of Miami-Dade Cty., Fla.*, 285 F.3d 962, 967 (11th Cir. 2002) (quoting *Gilmere v. City of Atlanta, Ga.*, 737 F.2d 894, 901 (11th Cir. 1984)). "A plaintiff 'must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.'" *Cuesta*, 285 F.3d at 967 (quoting *Bd. of the County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).

The City contends that Bowman cannot show that any City policy is the moving force of his injury. Doc. 45 at 15-21. Bowman does not challenge this contention in his opposition brief. *See* doc. 52. The court notes, though, that Bowman pleaded in his lawsuit that the City has a "policy and custom of engaging in discriminatory employment practices," and that evidence of this policy exists in the form of the City's agreement to a consent decree allegedly acknowledging that the City was engaging in discriminatory employment practices, the settlements of

15 discrimination lawsuits against the City between 1997 and 2013, and the filing of 75 internal complaints of discrimination against the City between 1991 and 2017. Doc. 1 at 1, 3-9. These contentions are unavailing for several reasons. As an initial matter, the consent decree refutes Bowman's contention that the City admitted to engaging in discriminatory practices. *See* doc. 15-1 at 4 (stating that "the City of Birmingham has denied the allegations in the plaintiffs' complaints" and that "[t]his Decree shall not constitute an adjudication or admission by the City of Birmingham . . . of any violation of law, executive order, or regulations"). *See also Gutierrez v. City of New York*, 756 F. Supp. 2d 491, 514 (S.D.N.Y. 2010) (holding a consent decree that expressly denied all liability arising from allegations of discrimination was not evidence of a city policy of discrimination). Moreover, the filing of a lawsuit does not necessarily mean that a plaintiff's allegations are true, nor does the settlement of a lawsuit necessarily act as an admission of liability. *See, e.g., Howard v. McLucas,* 871 F.2d 1000, 1003 n.4 (11th Cir. 1989) (consent decree provided that settlement was not admission of liability); *Barber v. Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Dist. Lodge No. 57*, 778 F.2d 750, 758 n.12 (11th Cir. 1985) (same). Finally, the filing of internal complaints by employees does not necessarily substantiate the allegations made in the complaints, nor does the existence of 75 complaints over 26 years, without evidence of their validity, establish a widespread pattern or

policy of discriminatory conduct by the City. *See Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("[T]he mere existence of previous citizens' complaints does not suffice to show a municipal custom . . . .") (citation omitted); *Brooks v. Scheib*, 813 F.2d 1191, 1193 (11th Cir. 1987) ("[T]he number of complaints bears no relation to their validity" where plaintiff failed to show past complaints had merit); *Doe v. Miami-Dade Cty.*, 797 F. Supp. 2d 1296, 1310 (S.D. Fla. 2011) (holding 51 claims of sexual misconduct against police force of 3,000 officers over four years were insufficient to establish "widespread pattern of constitutional abuses" in "extremely large" police force where investigations determined that most of the claims were non-meritorious). Therefore, Bowman's attempt to show a pattern or policy through these acts is unavailing.

Next, although Bowman does not raise it in his summary judgment briefing, the court notes also that Bowman sought to compel the deposition of former mayor William Bell to obtain evidence of the City's alleged policy or custom of discrimination, doc. 19, which the City opposed on the grounds that Bowman had not met his burden of showing that the deposition of a high-ranking government official was necessary, doc. 18. The court carried the motions, but allowed Bowman to depose Peggy Polk-Washington, the City's Director of Human Resources. Doc. 43-1. Polk-Washington testified that the City's policy was to "provide equal employment opportunities without regard to age, sex, race, color,

creed, national origin, or disability" and to comply with EEOC guidelines regarding discrimination and retaliation. *Id.* at 3-4. As to the internal complaints, Polk-Washington testified that no employees had filed a complaint of retaliation in 2016 or 2017, and that, while employees had filed complaints of hostile work environments, the resulting investigations concluded that the majority of the allegations failed to rise to the legal definition of a hostile work environment. *Id.* at 6. Washington-Polk testified further that she had never received any complaints alleging a City-wide pattern of discriminatory behavior, and that she would have contacted Mayor Bell to resolve such a complaint if she had received one. *Id.* at 16-17. Finally, she testified that she had no knowledge of any occasion in which Mayor Bell made alterations to a draft human resources policy before signing it. *Id.* at 17-18.

Perhaps recognizing that Polk-Washington's deposition testimony does not support his claim of a City policy or custom, Bowman decided not to address the City's argument on this issue.[4] *See* doc. 52. Consequently, Bowman has abandoned

---

[4] Because Bowman has not "satisf[ied] his burden of demonstrating extraordinary circumstances that would justify the deposition[ ] of" Mayor Bell in light of the information provided by Washington-Polk's deposition testimony, *see Spadaro v. City of Miramar*, No. 11-61607-CIV, 2012 WL 3614202, at *3 (S.D. Fla. Aug. 21, 2012) (citation omitted), and because Bowman has abandoned his claims against the City, both the motion to compel and the motion to quash, docs. 18 and 19, are due to be denied as moot.

the issue.[5] *See Sapuppo*, 739 F.3d at 681. Alternatively, the record simply does not support Bowman's contention. Accordingly, the City's motion on both the retaliation and the hostile work environment claims is due to be granted.

## C. The § 1983 Claims Against Moore and Patton

Bowman contends that Moore and Patton retaliated against him for his allegedly protected conduct of making various complaints of race discrimination and retaliation. Doc. 1 at 55-56. As a result, he filed suit against them in their individual capacities under § 1983 for their alleged violations of his constitutional rights under the First Amendment. Moore and Patton contend that they are entitled to qualified immunity. Doc. 45 at 21-34.

The defense of qualified immunity reflects both "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Accordingly, "government officials performing discretionary functions are immune not just from liability, but from suit, unless the conduct which is the basis for [the] suit violates

---

[5] The court notes that Bowman sought leave to file a 60 page response brief, doc. 50, which the court denied, doc. 51. However, a party that has abandoned an issue cannot revive that issue by claiming that it was foreclosed by page limits. *See Gonsalves v. Thompson*, 396 F. Supp. 2d 36, 44 (D. Mass. 2005) ("When a party is faced with a page limit, he must choose which of his arguments are most important. If an argument is abandoned . . . because of the page limit, the party has decided that the argument is not significant enough, relative to other arguments, for . . . consideration . . . Petitioner may not go back now and retrieve the abandoned argument").

clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Sanders v. Howze*, 177 F.3d 1245, 1249 (11th Cir. 1999). "'[A]ll but the plainly incompetent or one who is knowingly violating the federal law'" are entitled to the protection of qualified immunity. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quoting *Willingham v. Loughnan*, 261 F.3d 1178, 1187 (11th Cir. 2001)). Qualified immunity, however, "does not extend to one who knew or reasonably should have known that his or her actions would violate the plaintiff's federal rights." *Gaines v. Wardynski*, 871 F.3d 1203, 1207 (11th Cir. 2017).

As a threshold matter, a public official must have acted within the scope of her discretionary authority to invoke qualified immunity. *Jones v. Fransen*, 857 F.3d 843, 851 (11th Cir. 2017). Discretionary authority includes "all actions of a governmental official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'" *Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). When conducting this inquiry, the court must put aside "the fact that [the act] may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004).

If the defendant acted within the scope of her discretionary authority, "'the burden shifts to the plaintiff to show that qualified immunity is not appropriate.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Lee*, 284 F.3d at 1194). To make this showing, "the plaintiff must demonstrate . . . the following two things: (1) that the defendant violated her constitutional rights, and (2) that, at the time of the violation, those rights were 'clearly established . . . in light of the specific context of the case, not as a broad general proposition.'" *Gaines*, 871 F.3d at 1208 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled, in part, on other grounds by Pearson v. Callahan*, 555 U.S. 223 (2009)). The court "may decide these issues in either order, but, to survive a qualified-immunity defense, [the plaintiff] must satisfy both showings." *Jones*, 857 F.3d at 851.

Moore and Patton contend that they acted within the scope of their discretionary authority as City officers for all actions at issue. Doc. 45 at 23. Bowman does not dispute this point. *See* doc. 52. Thus, the court turns to the question of whether Moore and Patton violated Bowman's First Amendment rights by retaliating against him for the speech at issue. The government is afforded broad discretion when it regulates the speech of its employees while acting as an employer. *Boyce v. Andrew*, 510 F.3d 1333, 1341 (11th Cir. 2007) (citing *Connick v. Myers*, 461 U.S. 138, 140 (1983); *Pickering v. Board of Educ. of Twp. High Sch.*

*Dist. 205*, 391 U.S. 563, 568 (1968); *Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th

Cir. 1996)). In analyzing such claims, the court employs a four step approach:

> First, we consider whether the employee's speech may be fairly
> characterized as constituting speech on a matter of public concern. Only if
> this threshold issue is satisfied will the Court then move on to apply the
> second prong, where we weigh the employee's first amendment interests
> against the interest of the state, as an employer, in promoting the efficiency
> of the public services it performs through its employees. Third, if the public
> employee prevails on the balancing test, the fact-finder determines whether
> the employee's speech played a substantial part in the government's decision
> to demote or discharge the employee. Fourth, if the employee prevails by
> showing that the speech was a substantial motivating factor in the state's
> employment decision, the state must prove by a preponderance of the
> evidence that it would have reached the same decision . . . even in the
> absence of the protected conduct.

*Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1168 (11th Cir. 2013) (internal

citations and quotation marks omitted) (alterations in original). To fall within the

realm of the "public concern," an employee's speech must "relat[e] to a[ ] matter

of political, social, or other concern to the community." *Connick*, 461 U.S. at 146.

Absent extraordinary circumstances, however, First Amendment protection is

unavailable when "a public employee speaks not as a citizen upon matters of

public concern, but instead as an employee upon matters only of personal

interest[.]" *Id.* at 147. "A court must therefore discern the purpose of the

employee's speech—that is, whether she spoke on behalf of the public as a citizen,

or whether the employee spoke for herself as an employee." *Morgan v. Ford*, 6

F.3d 750, 754 (11th Cir. 1993) (citations omitted). To accomplish this, a court

considers "the content, form and context of a given statement, as revealed by the whole record." *Deremo v. Watkins*, 939 F.2d 908, 910 (11th Cir. 1991) (citing *Connick*, 461 U.S. at 147-48). A court may consider the employee's attempts to make the concerns public, along with "the employee's motivation in speaking." *Id.* at 911 (citations omitted).

Bowman contends that Moore and Patton retaliated against him for the four complaints he made internally.[6] *See supra* at pp. 4-6; doc. 52 at 8-9, 17, 22-23, 25. Moore and Patton contend that Bowman was speaking as an employee about the circumstances of his employment when he made each of these four complaints, not as a citizen about matters of public concern. Doc. 45 at 25. Based on the record before the court, it is clear that none of Bowman's complaints constitute protected speech. The context in which Bowman complained to Moore and the human resources department and his disagreement with the human resources department's investigation make clear that what Bowman took issue with was Moore's perceived preferential treatment of Kirk over Bowman in the workplace and Moore's subsequent workplace treatment of Bowman, not a matter of public concern. *See* doc. 52 at 7-8, 17-19; *see also Morgan*, 6 F.3d at 755 (employee's complaints of sexual harassment were made as an employee rather than as a citizen

---

[6] Bowman also filed an EEOC charge regarding Patton and Moore's alleged retaliatory conduct. Doc. 52-1 at 22. However, Bowman does not contend that the charge was a motivating factor for any retaliatory conduct against him. *See* doc. 52. Accordingly, it cannot support his argument that Patton and Moore are not entitled to qualified immunity.

where her speech "was driven by her own entirely rational self-interest in improving the conditions of her employment," "centered around her private matters, not matters of social interest," "largely focused upon how [the defendant] behaved toward her and how that conduct affected her work," and was made in "the form of complaints to official bodies" rather than statements to the public); *Ferrara v. Mills*, 781 F.2d 1508, 1516 (11th Cir. 1986) ("[A] public employee may not transform a personal grievance into a matter of public concern by invoking a supposed popular interest in the way public institutions are run") (citations omitted). Likewise, Bowman's complaint to Patton concerned only Moore's workplace conduct, and did not address issues of public concern. *See* docs. 52 at 25; 52-1 at 29. Summing up, in each statement at issue, Bowman spoke as an employee concerning private matters, not as a citizen concerning the public interest, and is therefore not entitled to First Amendment protections.

Because Bowman has failed to show that Moore or Patton retaliated against him for protected speech, the court need not proceed to the other steps of the four-part analysis, and concludes that Moore and Patton are entitled to qualified immunity. *See Boyce*, 510 F.3d at 1346-47 (citations omitted).

## IV. CONCLUSION

For the reasons explained above, the motion for summary judgment, doc. 44, is due to be granted. The court will enter a separate order dismissing this case.

**DONE** the 21st day of March, 2018.

ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE